**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **LINDSEY M. GLEUE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 16-4168-JWL** |
| **NANCY A. BERRYHILL,**[1] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1]On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for DIB and SSI benefits, alleging disability beginning August 13, 2012. (R. 11, 207, 213). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She argues that the ALJ erred in evaluating the medical opinions of her psychiatrist, Dr. Hatcher, and of the state agency psychologists; in evaluating the third party opinion of her mother; in evaluating the credibility of her allegations of disabling symptoms; and consequently also erred in assessing her residual functional capacity (RFC).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

    The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court addresses the alleged errors in the order presented in Plaintiff's Brief, and finds no error in the Commissioner's decision.

**II.     Medical Opinions**

Plaintiff claims the reasons given by the ALJ for discounting Dr. Hatcher's opinion are erroneous.  (Pl. Br. 25-27).  She claims the ALJ erred in according significant weight to the state agency psychologists' opinions because those psychologists did not have all of the record medical evidence in front of them.  Id. at 28.  She argues that although the ALJ found the state agency psychologists' opinion supported by certain healthcare providers' opinion that Plaintiff needed vocational training, that fact is also supportive of a finding that Plaintiff is currently unemployable.  Id.  Finally, she argues

that she received a vocational rehabilitation assessment report after the ALJ decision which was presented to, and admitted into the administrative record by the Appeals Council, which reveals that Plaintiff is limited to part-time work and demonstrates the error of the ALJ's according significant weight to the state agency psychologists' opinions. Id. at 28-29.

The Commissioner argues that in appropriate circumstances the opinions of state agency psychologists may be entitled to greater weight than the opinions of treating sources, and that because it is the ALJ's duty to review the evidence, assess RFC, and make the decision regarding disability, he is entitled to rely on such opinions even if the state agency psychologists did not have all of the evidence available to review. (Comm'r Br. 12). And, she argues that the ALJ's determination to accord significant weight to the state agency psychologists' opinions is supported by the record evidence. (Comm'r Br. 12-13). She argues that the reasons given to discount Dr. Hatcher's opinion are within the province of the ALJ and are supported by the record evidence. Id. at 13-18.

In her Reply Brief, Plaintiff once again argues that the ALJ accorded "inadequate weight to Dr. Hatcher's opinions," and explains why, in her view, the evidence better supports a finding of disability than the ALJ's finding that the state agency psychologists' opinions should be accorded greater weight than Dr. Hatcher's opinion. (Reply 2-7). Plaintiff argues once again that the vocational assessment report completed after the ALJ's decision in this case contradicts the state agency psychologists' opinions and the ALJ's reliance on those opinions. Id. at 7. Finally, she argues that it is not clear that the

Appeals Council considered the vocational assessment properly, and that had it done so it "would have found the assessment is substantial evidence further refuting the ALJ's flawed RFC finding and being [sic] another basis for it [(the ALJ's RFC assessment)] not being supported by the record." Id. at 9.

### A. The ALJ's Evaluation of the Medical Opinions of Dr. Hatcher and of the State Agency Psychologists

The ALJ provided numerous reasons for discounting the treating source opinion of Dr. Hatcher, finding that Dr. Hatcher "noted that she had only seen the claimant six times in four years." (R. 21). He discounted the opinion in part because the check box form in which it was contained "uses terms such as 'Category I,' [and] 'Category II' and despite the attempts to define these terms, they are not functional limitations and do not constitute an assessment of residual functional capacity." (R. 21). He noted that the opinion was based in part on reports of Plaintiff's parents, and was inconsistent with Plaintiff's ability to engage regularly in a variety of activities "which include going to the gym regularly, hanging out downtown playing the piano, photography, attending bible study, going out with friends including to clubs and being active in organized sports." Id. He noted that Dr. Hatcher expressed ambivalence regarding Plaintiff's impairments and was initially unsure how to diagnose Plaintiff, noting that Plaintiff feels entitled, has been far more concerned with her weight than her symptoms, behavior, and relationships, and that Plaintiff's mother reported that when she has a boyfriend, Plaintiff is unconcerned with other interests or long-term goals. Id.

The ALJ accorded the opinions of the state agency psychological consultants significant weight "reduced somewhat due to the subjective complaints of the claimant and her mother." (R. 22). He explained that he accorded this weight because the consultants are specialists in the field of psychology, and they are familiar with the Social Security Administration's definitions and evidentiary standards. Id. He noted that their opinions are consistent with the evidence summarized in his decision and "supported by the fact that [Plaintiff] has worked almost continuously since the alleged onset date of disability and by the opinions of various [healthcare] providers that she would benefit from vocational training." Id. at 23.

**B.     Analysis**

The court finds no error in the ALJ's evaluation of the medical opinions of Dr. Hatcher, or of the state agency psychologists. While there is evidence, as Plaintiff suggests, that could support according greater weight to the opinion of Dr. Hatcher, and lesser weight to the opinions of the state agency psychologists, the evidence does not compel that result. Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084

(citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620.

The reasons given by the ALJ to discount Dr. Hatcher's opinion are supported by the record evidence, and Plaintiff does not demonstrate that they are erroneous.  While it is true that no treating psychiatrist or psychologist treated Plaintiff more than did Dr. Hatcher, an ALJ is not required to accord the greatest weight to the medical source who has treated the plaintiff most.  And, six visits in the course of four years is not an overwhelming number of visits, especially when dealing with psychiatric impairments of the severity alleged in this case and allegedly resulting in the limitations opined by Dr. Hatcher.

The ALJ is also correct that the form on which Dr. Hatcher provided her opinion refers to "Categories" of limitations, and does not relate the categories to specific functional limitations.  As Plaintiff argues, at the hearing Plaintiff's attorney provided hypothetical questions to the vocational expert (VE) based upon information provided in Dr. Hatcher's statement, expressing that Plaintiff was precluded from performing certain mental abilities for 15 percent or more of an eight-hour workday, and in each case, the VE opined that such inability to perform would preclude competitive employment.  (R. 60).  Nonetheless, as the ALJ found, the inability to perform certain mental abilities or aptitudes for a certain percentage of an eight-hour workday does not express a functional limitation.  Moreover, Dr. Hatcher's form suggests that she was not sure of the meanings provided for each "Category" of limitation because she provided extensive explanatory

8

nuance for the limitations suggested for many of the mental abilities or aptitudes included in the form. (R. 402). None of the explanatory nuance was included in the hypothetical provided by Plaintiff's counsel to the VE. And, while the form completed by Dr. Hatcher no doubt conveys her opinions in some manner, it was not error for the ALJ to note its problems in conveying functional limitations.

While it would likely be error to discount Dr. Hatcher's opinion solely because it relied, in part, on the input of Plaintiff's parents, that is not what happened here. Here, the ALJ discounted the opinion for numerous reasons, including that the opinion included Plaintiff's parents input which was inconsistent with Plaintiff's significant activities. While it is true that such activities as performed by Plaintiff do not equate to substantial gainful activity, the activities performed on a regular basis by Plaintiff in this case, and relied upon by the ALJ as inconsistent with Dr. Hatcher's opinion do suggest that Dr. Hatcher limited Plaintiff more than she is actually limited.

Finally, Plaintiff appears to use Dr. Kirk's report to vouch for Dr. Hatcher's opinion. (Pl. Br. 26-27). However, Dr. Kirk recommended assistance and training "for either completion of educational pursuits or employment." (R. 426) (emphasis added). As such, Dr. Kirk's report is included in the ALJ's allusion to "the opinions of various providers that [Plaintiff] would benefit from vocational training" (R. 23), in support of his determination to accord significant weight to the opinions of the state agency psychologists. Id. at 22-23. Plaintiff shows no error in the ALJ's evaluation of Dr. Hatcher's opinion.

With regard to the ALJ's giving significant weight, "reduced somewhat," to the opinions of the state agency psychological consultants, Plaintiff has not demonstrated error. Plaintiff is correct to argue that the consultants did not have all of the medical evidence (particularly Dr. Kirk's report) when they formed their opinions. However, the ALJ reviewed all of the record evidence including Dr. Kirk's report when evaluating the consultants' opinions, and as noted above, Dr. Kirk's report is included in the ALJ's allusion to "the opinions of various providers that [Plaintiff] would benefit from vocational training" (R. 23) in support of his determination to accord significant weight to the opinions of the state agency psychologists. Id. at 22-23. While Plaintiff is correct that the fact she would benefit from vocational training might be viewed as supporting a finding that Plaintiff is not currently employable, that is not the view taken by the ALJ. He viewed it as supporting the opinions of the psychological consultants and of his finding that Plaintiff currently has the capacity to perform unskilled work at all exertional levels, "limited to simple, routine, repetitive work, with only occasional interaction with co-workers and no interaction with the general public." (R. 23). Such unskilled work involves "simple duties that can be learned on the job [(vocational training)] in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a) (brackets added). Plaintiff has not shown that the ALJ's view is unreasonable or erroneous in light of the record or of the law.

Plaintiff's appeal to the report of vocational rehabilitation testing performed by Ms. Roddy after the administrative hearing, submitted to the Appeals Council, and made

a part of the administrative record by the Appeals Council, does not require a different result.  As Plaintiff's argument suggests, new evidence received and made a part of the record by the Appeals Council is a "part of the administrative record to be considered by this court when evaluating the ALJ's decision for substantial evidence."  O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994) (brackets omitted); accord Threet v. Barnhart, 353 F.3d 1185, 1191 (10th Cir. 2003).  Therefore, the court must consider the entire record, including Ms. Roddy's Vocational Assessment Report when deciding whether substantial evidence supports the ALJ's decision.  In her Reply Brief, Plaintiff suggests that remand is necessary for the Appeals Council to discuss the Vocational Assessment Report and explain how it evaluated that report.  (Reply 8-9) (citing Roland v. Colvin, No. 12-2257-SAC, 2013 WL 4401880, *6 (D. Kan. Aug. 15, 2013)).  However, the Tenth Circuit recently decided that remand was not necessary in such a case, because although "an express analysis of the Appeals Council's determination would be helpful for purposes of judicial review," the Appeals Council is not required to specifically discuss new evidence submitted to it.  Vallejo v. Berryhill, 849 F.3d 951, 955 (10th Cir. 2017) (quoting Martinez v. Barnhart, 444 F.3d 1201, 1207-08 (10th Cir. 2006)) (brackets omitted).  It concluded that "[t]he district court's only option was to conduct a substantial-evidence review by assessing the entire agency record, including" the new evidence.  Id. 849 F.3d at 956.  The court finds that, as the Appeals Council noted, the new evidence, including Ms. Roddy's report "does not provide a basis for changing the Administrative Law Judge's decision."  (R. 2).

11

While the report opined that Plaintiff's "reported lack of interest toward employment . . . was a disability related factor rather than an attitude," the ALJ had already reached the contrary conclusion, and in doing so had rejected much of the same evidence relied upon by Ms. Roddy.  For example, Ms. Roddy reported that the personal data sheet had been completed by one of Plaintiff's parents who reported that Plaintiff would like to work 40 hours per week, but that Plaintiff "stated she wasn't sure if she even wanted to work at all."  (R. 340).  The "Beta 'IQ'" score of 89 reported in Ms. Roddy's testing (R. 342) was quite similar to the "full scale IQ of 86, in the low average range," revealed in Dr. Kirk's testing.  (R. 20).  Ms. Roddy noted that scores below 196 or above 247 on the ECS (Employability Competency System) appraisal should be used with caution but that "[s]cores between 200 and 245 accurately reflect the test taker's ability," and she noted that Plaintiff's reading score was 231, reflecting "the following functional abilities:"

> Can handle most routine reading and writing tasks related to their life roles. Can interpret routine charts, graphs, and labels; read and interpret a simple handbook for employees; interpret a payroll stub; complete an order form and do calculations; fill out medical information forms and job applications. Can follow multi-step diagrams and written instructions; and write a simple accident or incident report.  Can handle jobs and job training situations that involve following oral and simple written instructions and diagrams

(R. 342-43).  Yet, Ms. Roddy's report appears to accept Plaintiff's report that she is unemployable in part because she has difficulty reading.  Ms. Roddy stated that "part-time employment would appear to be a better fit for [Plaintiff] at this time."  (R. 345).

12

But, she provides numerous occupations "suggested for continued vocational exploration."

The ALJ noted that in the Dillard's men's shoe department Plaintiff had a strong sales record and her "contact with customers was so outstanding at that job, she won an award." (R. 17). He noted that "the clinical and objective findings in the record are also inconsistent with her allegations of total debilitation." (R. 18). He noted Dr. Karpowitz's finding that Plaintiff was "very emotionally immature and unmotivated," and that he diagnosed Plaintiff with malingering. (R. 19). He noted Dr. Karpowitz's recommendation "that she continue her part-time job . . . and increase her hours." Id. He noted Plaintiff's therapist's finding that Plaintiff "lacked motivation towards self-improvement while putting much of her energy towards obsessing over male relationships." (R. 20). He discounted Dr. Hatcher's opinion, in part, because it had been completed, like Ms. Roddy's report, partially on the basis of input from Plaintiff's parents. Finally, he found that the state agency psychologists' opinions were supported "by the fact that [Plaintiff] has worked almost continuously since the alleged onset date of disability." In sum, Ms. Roddy's opinion is a vocational opinion, not a medical opinion. It is based, in part on medical opinions which have been rejected or discounted by the ALJ. It is based in further part on Plaintiff's reports of her mental limitations, which the ALJ found not credible and inconsistent with the other record evidence. The ALJ's findings are supported by the record evidence, and as the Appeals Council found, Ms. Roddy's report does not change the ALJ's determination.

### III.     The Credibility Determination

The court's review of an ALJ's credibility determination is deferential.  Credibility determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule").  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

The ALJ found that Plaintiff's allegations of symptoms resulting from her mental impairments are not credible for five broad reasons.  He found inconsistencies in Plaintiff's reporting at various points in the record, that Plaintiff's continuous working during the period at issue suggested she "believes she is capable of doing some kind of work," and that there are inconsistencies between Plaintiff's reports and her mother's reports.  (R. 17).  He found that Plaintiff has been non-compliant with treatment recommendations and generally uninterested during the treatment process, and that

14

"clinical and objective [(medical)] findings in the record are also inconsistent with her allegations." Id. at 18.

The court will not repeat its discussion in the previous section of this opinion, but suffice it to say that the ALJ's reasons are supported by the record evidence. Plaintiff's argument in this regard provides alternative explanations for the ALJ's findings regarding credibility, but as such her arguments merely seek to have the court reweigh the evidence and reach a credibility determination more favorable to her view of the case. The court may not do so. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172; see also, Bowling, 36 F.3d at 434 (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision."). Granting the credibility determination due deference, the court finds no error.

## IV.  The Opinion of Plaintiff's Mother

In the Tenth Circuit, an ALJ is not required to make specific, written findings regarding each witness's credibility when the written decision reflects that the ALJ considered that testimony. Blea, 466 F.3d at 914-15; Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996). In Adams, the court "decline[d] claimant's invitation to adopt a rule requiring an ALJ to make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony." 93 F.3d at 715. The Adams court determined "that the ALJ considered the testimony of claimant's wife in making his decision because he specifically referred to it in his written

15

opinion," and the court found no error in the ALJ's failure to make specific, written findings regarding the testimony. Id. (emphasis added). Thirteen years later, in a published opinion the Tenth Circuit confirmed the rule that an ALJ is not required to make specific written findings of credibility regarding third-party testimony if the written decision reflects that the ALJ considered it. Blea, 466 F.3d at 915. The Blea court noted that, "[h]ere, the ALJ made no mention of Mrs. Blea's testimony, nor did he refer to the substance of her testimony anywhere in the written decision. Thus, it is not at all 'clear that the ALJ considered [Mrs. Blea's] testimony in making his decision.'" Id. (quoting Adams, 93 F.3d at 715).

Here, the ALJ specifically addressed two function reports completed by Plaintiff's mother:

> The claimant's mother, a psychiatric nurse practitioner, not only filled out a third party function report, she also filled out the claimant's function report on her behalf (Exhibits 7E; 8E). After careful consideration and in accordance with Social Security Ruling 06-03p, these third party opinions have been afforded limited weight and only to the extent that they are consistent with the "paragraph B" criteria and residual functional capacity herein. As noted above, while she testified that the claimant was like a teenager and that she and the claimant's father did not want her to be dependent on them the rest of her life, she also testified that they had filled out the paperwork for the vocational training that had been recommended after the recent KU assessment.

(R. 23).

As noted above, the ALJ had already found that there were inconsistencies between Plaintiff's reports and her mother's reports. (R. 17). This was one basis to discount both Plaintiff's allegations, and her mother's reports. In stating that Plaintiff's

16

mother's reports were afforded limited weight only to the extent they are consistent with the "paragraph B" criteria, the ALJ also discounted the reports to the extent they are not consistent with the "paragraph B" criteria. Finally, as Plaintiff suggests, the ALJ discounted the reports because Plaintiff's mother had filled out paperwork for vocational training. Plaintiff argues that the ALJ erred in weighing her mother's opinion because filling out paperwork for vocational training "is not a legitimate reason to discredit [P]laintiff's mother." (Pl. Br. 33). Contrary to Plaintiff's argument, the fact that Plaintiff's mother filled out paperwork for vocational training suggests that her mother believes Plaintiff is able to work. That is a legitimate reason to discount her opinion that Plaintiff has disabling limitations. The ALJ provided three legitimate reasons to discount Plaintiff's mother's third-party opinions. More is not required.

## V.     RFC Assessment

In her final argument, Plaintiff claims the ALJ erred in assessing Plaintiff's RFC. (Pl. Br. 34-35). However, this claim is based exclusively on "Plaintiff's true mental RFC opined by Dr. Hatcher." Id. at 34. Because the court determined above that the ALJ did not err in weighing Dr. Hatcher's medical opinion, Dr. Hatcher's opinion is not "Plaintiff's true mental RFC" as Plaintiff argues, and she has not shown error in the RFC assessed.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 12th day of January 2018, at Kansas City, Kansas.

                                            s:/ John W. Lungstrum
                                            **John W. Lungstrum**
                                            **United States District Judge**